Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | HARRY D. LEINENWEBER | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 4592 | DATE | April 27, 2001 |
| CASE TITLE | Bobby Ford v. Warden James H. Page, et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motion to dismiss is granted in part and denied in part. Defendants Adams and Stewart are dismissed from this action. Remaining defendants are given 20 days to answer or otherwise plead to the remaining claims in the complaint. An order of default is entered against defendant McBride for failure to answer or otherwise plead to the complaint. Plaintiff is given 30 days to show good cause why defendant King was not served within 120 days of the filing of this complaint on October 2, 2000. If plaintiff does not show good cause or otherwise respond within 30 days, defendant King will be dismissed from this action.
(11) ■ [For further detail see attached order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | APR 30 2001 | |
| | Notified counsel by telephone. | | date docketed | 34 |
| X | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CLH | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
APR 27 2001
Judge Harry D. Leinenweber
U. S. District Court

| | |
|---|---|
| BOBBY FORD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WARDEN JAMES H. PAGE, ASST. WARDEN )<br>MONTGOMERY, SUPT. JOHN THOMAS, )<br>INVESTIGATOR STEWART, LT. McBRIDE, )<br>GEORGIA SCHONAUER/GRIEVANCE OFFICER, )<br>COUNSELOR D. LUCE, A. JOHNSON, C/O KING, )<br>M. THOMPSON, LT. JACKSON, LEORA HARRY, )<br>C/O SELMON, JIM SIMMONS, SGT. )<br>HOLLINGSWORTH, DIRECTOR SNYDER, )<br>C/O D. VOIGHTS, MED-TECH ADAMS, )<br>C/O SPENCER, C/O AUTUMN, C/O's UNKNOWN )<br>and ALL OTHER KNOWN AND UNKNOWN )<br>OFFICIALS, )<br>)<br>Defendants. ) | CASE NO. 00 C 4592<br><br>JUDGE LEINENWEBER<br><br>APR 3 0 2001 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bobby Ford, currently an inmate at the Pontiac Correctional Center, brings this *pro se* complaint pursuant to 42 U.S.C. § 1983. On October 2, 2000, the court dismissed Ford's claims in regard to a disciplinary hearing and in regard to defendants allegedly denying Ford's grievances. Defendants Georgia Schonauer, D. Luce, M. Thompson, A. Johnson, Leora Harry, Director Snyder, and Jim Simmons were accordingly dismissed from this action. The court allowed Ford to proceed *in forma pauperis* on his remaining claims against the remaining defendants.

1

Defendants James Page, Jesse Montgomery, John Thomas, Rodney Stewart, Leonta Jackson, Anthony Selmon, Vincent Hollingsworth, Daniel Voights, John Adams, Raphael Spencer, and Bukari Autman[1]/ have filed a motion to dismiss, to which Ford has responded.

## I. Standard of Review

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal notice pleading requires only that the plaintiff "set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999). When ruling on a motion to dismiss, the court assumes that well-pleaded allegations are true and draws all reasonable inferences in the light most favorable to the plaintiff. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999), *cert. denied*, 530 U.S. 1234 (2000). This rule has particular force when considering the allegations of a *pro se* complaint, which are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Accordingly, *pro se* complaints are to be liberally construed. *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 378 (7th Cir. 1988). However, while it is often said that a claim may be dismissed only if, as a matter of law, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)), the Seventh Circuit has observed that this maxim "has never been taken literally." *Kyle v. Morten High School*, 144 F.3d 448, 455 (7th Cir.

---

[1] Ford spelled defendant Autman's name "Autumn." The court will use the correct spelling of Autman's name. Defendant Sally McBride was served on February 8, 2001; however, she has not answered or otherwise pleaded to the complaint nor has an attorney filed an appearance on her behalf. Defendant King has not been served yet.

2

1998) (*quoting Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir. 1984)). All plaintiffs – whether *pro se* or represented – must include in the complaint allegations concerning all material elements necessary for recovery under the relevant legal theory. *Chowla v. Klapper*, 743 F. Supp. 1284, 1285 (N.D. Ill. 1990).

## II. Facts

The following facts are taken from Ford's complaint. The court has not included facts concerning the claims and defendants that have already been dismissed.

Ford was assigned to the I-House Segregation Unit at Stateville Correctional Center on December 3, 1999. At about 10:00 p.m., defendant D. Voights intentionally smashed Ford's left arm and hand in the solid steel door, causing a four-inch cut on his elbow and fracturing his left ring finger, which swelled permanently. Ford claims that Voights did this because Ford was taking too long to empty his garbage through the food slot.

Ford demanded immediate medical attention but Voights walked away, smiling, after seeing the blood. About 20 minutes later, defendant Lt. Jackson came but he refused to get medical attention for Ford. Rather, his main concern was to close the chuck hole. Ford refused to remove his arm because defendants have a policy of ignoring inmates once the food hatch is closed. Lt. Jackson left, denying Ford medical attention, but then returned some time later with defendant Med-tech Adams who cleaned the wound but failed to treat or document the finger injuries or place Ford on sick call for x-rays. Adams provided inadequate treatment, and later that night Ford's elbow swelled to the size of a soft ball and his finger swelled to the size of a golf ball. Although he was in great pain, he was not given any pain pills.

Voights wrote a false disciplinary report, charging Ford with assault in order to conceal Voights's assault on Ford.

On May 1, 2000, Ford called defendant Lt. McBride to his cell, complaining that the gallery officer had refused to return his laundry. McBride came to Ford's cell because Ford refused to take his arm out of the food slot. McBride left to check on the laundry. When he[2] returned about 45 minutes later, he told Ford that he could not find it. Ford refused to move his arm, and McBride began twisting, jerking and slamming Ford's arm into the steel doors. Several unknown correctional officers aided McBride. After they forced Ford's arm into the cell, they left and refused to get medical attention for him, although he was in great pain and requested it.

Defendant C/O Spencer refused to get medical attention for Ford later that day at the 11:00 p.m. count. When Spencer was serving breakfast on the morning of May 2, Ford put his arm out the chuck hole, demanding medical attention. Spencer refused to feed Ford, call for a med-tech, or get a sergeant. After Spencer left, the other inmates began banging on their doors. Defendants Sgt. Hollingsworth, C/O Selmon, and C/O Spencer came to the gallery and Ford told Hollingsworth that he needed medical attention. Hollingsworth refused to call for medical attention and to feed Ford.

At 7:30 a.m., med-tech Dave told Ford to get dressed for the hospital emergency room. At the hospital, Ford was x-rayed but not given any pain pills.

On May 15, 2000, defendant McBride, aided by defendants C/O King and C/O Autman, struck Ford with his fist, cutting Ford over the left eye. They left without getting any medical attention for Ford.

---

[2]Ford refers to McBride as "he"; however, a "Sally McBride" signed the summons. The court accordingly is unsure of the gender of defendant McBride.

At the shift change, Ford reported the assault to C/O Odate and Lt. L.C. Johnson (not defendants), who immediately had Ford taken to the hospital. Med-tech Adams wrote an incident report and called defendant Stewart of Internal Affairs, but did not treat Ford.

Stewart took pictures of Ford's injuries, wrote an incident report, and returned Ford to his unit. In the morning, Ford was taken to defendant Montgomery, Warden of Operations, and defendants Supt. Thomas and Stewart. Ford explained that the conditions of confinement in the unit led to his psychological pain and suffering and to the attacks against him. Montgomery and Thomas threatened to transfer Ford for complaining and reporting staff conduct. Ford asked if he was being transferred in retaliation, and the assistant warden told him to get out of his office. The next day, Ford was transferred to Pontiac Correctional Center.

Ford has sprinkled numerous allegations about his conditions of confinement throughout his complaint and in a separate section, including claims that the cells are filthy and he is not given adequate cleaning supplies; soiled mattress; ventilation system that blows out contaminants; inadequate laundry service; no educational or job programs for segregation inmates; no restroom facilities on the yard; no running water in the yard during the summer; no provisions for winter clothing in the yard during the winter; broken basketball rims; half-cooked, cold, and nutritionally-deficient food; mentally-ill inmates housed with other inmates. Ford avers that he suffers from a fungus, low self-esteem, psychological pain, and perception and sleep disorders as a result of these conditions.

Based on these facts, Ford has divided his complaint into eight counts: Count 1. The assault on December 3, 1999. Count 2. Deprivation of adequate medical care. Count 3. Due process violations in regard to the Adjustment Committee hearing of December 10, 1999. Count 4. The

assault on May 1, 2000. Count 5. Refusal to call for immediate medical care on May 1, 2000. Count 6. Inhumane conditions of confinement. Count 7. Supervisory officials condoned, approved, sanctioned, or ignored the unconstitutional actions of their subordinates. Count 8. All defendants failed to follow and enforce state regulations and rules of the Illinois Department of Corrections.

The court observes that Ford's division of his counts is an inartful attempt to propound legal theories based on the facts he related. The court accordingly will analyze this action both as to these counts because defendants based their motion to dismiss on them and also as to the causes of actions the court derives from Ford's facts, that is, the three alleged uses of excessive force on December 3, 1999, and May 1 and 15, 2000; the three alleged delays of medical care on these dates; the alleged retaliatory transfer as a result of filing grievances; and inhumane conditions of confinement. The court previously dismissed Count 3 in its initial review and therefore will not revisit it in this discussion.

### III. Analysis

### A. Exhaustion of Administrative Remedies

Defendants contend that counts 4-8 of should be dismissed because Ford did not exhaust his administrative remedies. Under 42 U.S.C. § 1997e(a), part of the Prison Litigation Reform Act (PLRA),[2] the court is directed to dismiss a suit brought with respect to prison conditions if the court determines that a plaintiff has failed to exhaust his administrative remedies. *Perez v. Wisconsin Dept.*

---

[2] 42 U.S.C. § 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

6

*of Corrections*, 182 F.3d 532 (7th Cir. 1999). The exhaustion requirement was further explained in *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999):

> [I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim. The potential effectiveness of an administrative response bears no relationship to the statutory requirement that prisoners first attempt to obtain relief through administrative procedures.

IDOC's administrative grievance system is set out in the Illinois Administrative Code. Inmates must follow these procedures: (1) The inmate must first attempt to resolve the situation through his counselor; (2) If the situation remains unresolved, he may file a written grievance within six months of the incident or six months after the receipt of a decision concerning an informal resolution with the facility's grievance officer. Upon completion of an investigation by the grievance officer, the conclusions, and, if necessary, recommendations, are forwarded to the Chief Administrative Officer; (3) If the inmate does not believe the situation is resolved, he may appeal to the Director of the IDOC. The Administrative Review Board as the Director's designee reviews the appeal of the grievance and determines whether a hearing is necessary; (4) The Administrative Review Board forwards its decision and any recommendations to the Director or other designee, who makes a final determination. 20 Ill. Admin. Code § 504.810-850.

After examining the various exhibits that Ford attached to both his complaint and his response to the defendants' motion to dismiss, the court agrees that Ford has made no showing that he exhausted his administrative remedies as to Counts 7 and 8. Moreover, inadequate hearings and the mere fact that Illinois imposes its own procedural requirements on upper-echelon prison officials is insufficient to show an independent violation of the federal Constitution. *See Olim v. Wakinekona*,

461 U.S. 238, 250-51 (1983); *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (*en banc*), *cert. denied*, 489 U.S. 1065 (1989).

It appears that Ford has exhausted some, but not all, of his claims contained in Count 6 concerning his conditions of confinement. Ford filed a grievance on July 19, 1999, complaining about flooding in 1 Gallery because of holes in the ceiling and another grievance on August 19, 1999, complaining about the food at Stateville. However, he has not filed any documentation that, if these issues remained unresolved, he then appealed through the line of authority. The one claim as to conditions which he appears to have exhausted is in regard to recreation in the yard since he has attached a copy of a letter from Robert L. Radmacher of the Administrative Review Board, dated November 15, 1999, determining that his grievance was without merit.

The court, however, will not send either plaintiff or defendants back to the drawing board to determine which of Ford's multitudinous claims as to his conditions of confinement were exhausted. 42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act provides that prisoners may not bring civil actions for mental or emotional injury without a prior showing of physical injury.

In *Zehner v. Trigg*, 133 F.3d 459 (7th Cir. 1997) (*"Zehner II"*), the Seventh Circuit rejected a constitutional challenge to § 1997e(e). *Citing Carey v. Piphus*, 435 U.S. 247, 264 (1978), the Seventh Circuit recognized that mental and emotional distress may be a compensable injuries under § 1983. *Zehner II*, 133 F.3d at 461. The Seventh Circuit then began its analysis "from the premise that 'Congress may not effectively nullify the rights guaranteed by the Constitution by prohibiting all remedies for the violation of those rights.'" *Id.* (quoting *Zehner v. Trigg*, 952 F.Supp. 1318, 1329 (S.D. Ind.1997) ( *"Zehner I"* ), *aff'd, Zehner II* ). However, that "does not mean that a remedy of damages must be available for every constitutional violation." *Zehner II*, 133 F.3d at 461. Congress

8

created § 1983 and it has never been held that such a remedy is constitutionally mandated. *Id.* at 461-62. "[I]t would be odd to conclude that Congress may not take away by statute what it has given by statute." *Id.* at 462. Section 1997e(e) was held to be "a permissible restriction on the availability of damages for constitutional violations." *Id.*

The Seventh Circuit further recognized that "there is a point beyond which Congress may not restrict the availability of judicial remedies for the violations of constitutional rights without in essence taking away the rights themselves." *Id.* (quoting *Zehner I*, 952 F.Supp. at 1331). Section 1997e(e) cannot be found to go beyond this point because it still leaves prisoners with the remedy of injunctive and declaratory relief, as well as contempt proceedings to enforce such relief. *Zehner II*, 133 F.3d at 462. Moreover, the Constitution does not require an individually effective remedy for every constitutional violation. *Id.* It was sufficient in *Zehner II* that, even though the *Zehner* plaintiffs lacked standing to pursue injunctive relief, other prisoners could have such standing or a claim for damages could be pursued at the point any physical injury arose.

As a result of the allegedly inhumane conditions at Stateville, Ford did not suffer any physical injury.[3] He accordingly cannot bring an action for money damages pursuant to § 1997e(e), although injunctive or declaratory relief could still be available to him if he were still incarcerated at Stateville and could demonstrate that these conditions violated the Eighth Amendment and that he had exhausted his administrative remedies. *Accord Harper v. Showers*, 174 F.3d 716, 719-20 (1999) (prisoner who cannot seek damages for mental suffering because of § 1997e(e) still can seek injunctive relief). Ford, however, has been transferred to Pontiac Correctional Center. This claim

---

[3]The fungus that Ford contracted is not a serious medical condition, *Landfair v. Sheahan*, 878 F. Supp. 1106, 1112-13 (N.D. Ill. 1995), and hardly the type of physical injury contemplated by § 1997e(e).

9

is now moot as to any injunctive relief Ford might be seeking. *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) ("If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'") (quoting *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988)).

Ford attached a letter to his complaint, dated June 29, 2000, from Leora Harry of the Administrative Review Board, denying his grievance in regard to his transfer to Pontiac. Ford accordingly has exhausted his claim that he was transferred to Pontiac in retaliation for filing grievances.

There is no indication on Ford's part that he filed a grievance or exhausted his administrative remedies as to Count 4, the assault on May 1, 2000, and Count 5, the refusal to call for immediate medical care on May 1, 2000. It also does not appear that Ford filed any grievances or exhausted his administrative remedies in regard to the assault and denial of medical treatment on May 15, 2000. The Seventh Circuit, however, did indicate a potential exception to the rule of exhaustion in *Perez*, 182 F.3d at 538: "It is possible to imagine cases in which the harm is done and no further administrative action could supply any 'remedy.' ... Suppose the prisoner breaks his leg and claims delay in setting the bone is cruel and unusual punishment. If the injury has healed by the time suit begins, nothing other than damages could be a 'remedy,' and if the administrative process cannot provide compensation then there is no administrative remedy to exhaust.' *Id.*

When the officers allegedly assaulted Ford on May 1 and 15, 2000, the harm was done. The Illinois Department of Corrections' administrative process does not provide for money damages, which is the remedy Ford is seeking. These alleged assaults fit squarely within the *Perez* exception, and Ford accordingly was not required to exhaust his administrative remedies before filing this action.

It appears that Ford is claiming that defendants were deliberately indifferent to his serious medical needs when they refused to immediately call for medical assistance after the alleged assaults. If Ford was claiming that he experiences on-going medical problems stemming from these attacks that were not being addressed, then the court could safely determine that he has not exhausted his administrative remedies. However, Ford is alleging past deliberate delays in treating him. This claim, too, accordingly fits within the *Perez* exception.

## B. Use of Excessive Force

Defendants argue that the core judicial inquiry in determining whether an official used excessive force in violation of the Eighth Amendment is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian,* 503 U.S. 1, 6, 9 (1992). The infliction of pain in the course of a prison security measure does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable and hence unnecessary in the strict sense. *Whitley v. Albers,* 475 U.S. 312, 319 (1986).

Based on these legal principles, defendants aver that Ford refused several direct orders to remove his arm from the chuckhole so that it could be closed. Defendants contend that the force that the correctional officers therefore used was the type authorized for security purposes in a good-faith effort to maintain or restore discipline, and not maliciously and sadistically to cause harm.

As noted earlier, the purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Gibson,* 910 F.2d at 1520. Even if the force applied was to maintain discipline, it still cannot be more than the necessary force needed. *See Whitley,* 475 U.S. at 320-21 (prison guards could only use reasonable force in a good faith effort to maintain or restore discipline

and were not entitled to use excessive force). Whether the amount of force the officers applied was excessive is a question of fact that cannot be decided on a motion to dismiss nor, probably, on a motion for summary judgment.

The court accordingly denies defendants' motion to dismiss in regard to Ford's claims of excessive force in regard to Voights for the December 3, 1999, incident; and Autman for the May 15, 1999, incident.[4]

## C. Delay in Medical Attention

The Eighth Amendment protects inmates from deliberate indifference to a serious injury or medical need. *See Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *Zentmeyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The Supreme Court refined the *Estelle* definition of "deliberate indifference" in *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), holding that a prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety;" and is both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and draws the inference. Neither negligence nor even gross negligence is a sufficient basis for liability; rather, liability attaches only if the conduct is intentional or criminally reckless. *See Salazar v. City of Chicago*, 940 F.2d 233, 238-39 (7th Cir. 1991) (noting that any act with a state of mind less than intent or criminal recklessness, such as negligence or gross negligence, does not amount to punishment). Allegations of negligence or medical malpractice do not state an Eighth Amendment claim. *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997). However, deliberate indifference

---

[4]McBride, who allegedly used excessive force during the May 1 incident, is not represented in this motion to dismiss.

can arise by a failure to provide prompt treatment for serious medical needs or by intentionally interfering with treatment once prescribed. *See Estelle*, 429 U.S. at 104-05.

Ford claims three instances of intentional delays in giving him necessary medical care. In regard to the December 3, 1999, assault, he alleges that both Voights and Jackson refused to get him medical help. He then states that "Lt. Jackson walked away denying me medical attention. Defendant Med-tech Adams came some time later with Lt. Jackson and clean[ed] the wound, ..." (Plaintiff's complaint ¶18.) Because Jackson returned with a med-tech, this appears to contradict Ford's argument that Jackson denied him treatment. However, the court cannot discern from Ford's complaint how much time expired between Jackson's leaving and his returning with the med-tech or whether Ford's injuries were a serious medical need, that is, one that "may be life threatening or pose a risk of needless pain or lingering disability if not treated at once." *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991). Because it is *not* clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, the court finds that Ford has stated a claim in regard to both Voights and Jackson.

Ford himself states that Med-tech Adams gave him inadequate treatment. Allegations of neglect or medical malpractice do not state Eighth Amendment claims. *Gutierrez*, 111 F.3d at 1374. This claim is accordingly dismissed as to Med-tech Adams.

In regard to the May 1, 2000, assault, it appears that McBride and Spencer refused to get medical attention for Ford for a number of hours. However, he claims that Hollingsworth, Selmon and Spencer refused to get him medical care at breakfast time on May 2, but that a med-tech came at 7:30 a.m. to take him to the hospital emergency room. Once again, there are too many facts that the court cannot ascertain from the complaint and thus finds that at this stage of the litigation, Ford

has stated a claim in regard to a delay in medical care in regard to defendants Spencer, Selmon, and Hollingsworth.[5]

In regard to the assault on May 15, 2000, Ford alleges that McBride, King, and Autman left him without medical attention after they assaulted him. Ford claims he did not get medical attention until the shift change when he was immediately transported to the hospital. At this stage of the litigation, Ford has stated a claim in regard to a delay in medical care as to defendants Autman.[6]

Ford also claims that Med-tech Adams wrote an incident report and called defendant Stewart of Internal Affairs, but did not treat Ford. Because Ford was transported to the hospital, it is not clear whether Adams even had any duty to treat Ford at this time. Nor is there any indication that Adams acted with deliberate indifference toward Ford, and the court is hard pressed to see how Ford can sustain such an allegation when he states he was immediately sent to the hospital. The court accordingly dismisses this claim against Adams. Because Ford has not stated a claim against Adams in regard to Ford's medical care for either the December 3, 1999, or the May 15, 2000, incidents, the court dismisses Adams from this action.

The court accordingly denies defendants' motion to dismiss in regard to the delay in medical care in regard to Voights and Jackson for the December 3, 1999, incident; Spencer, Hollingsworth, and Selmon for the May 1, 2000, incident; and Autman for the May 15, 1999, incident. The court grants defendants' motion to dismiss in regard to the claims against Med-tech Adams and dismisses him from this action.

---

[5]McBride is not represented in this motion to dismiss.

[6]McBride is not represented in this motion to dismiss and King has not been served.

14

### D. Retaliatory Transfer

Ford avers that Montgomery and Thomas threatened to transfer him for complaining and reporting staff conduct. Prisoners do not have a constitutional right to remain in or be transferred to a correctional institution of their own choosing. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Prison officials have the discretion to transfer prisoners for any constitutionally permissible reason. *Shango v. Jurich*, 681 F.2d 1091, 1098 (7th Cir. 1982). Nevertheless, retaliation for the exercise of a constitutionally protected right is actionable under 42 U.S.C. § 1983, even if the acts, if taken for different reasons, would have been proper. *See Matzker v. Herr*, 748 F.2d 1142, 1150 (7th Cir. 1984). It is well established that punishing inmates for filing grievances violates their constitutional rights. *See, e.g., Babcock v. White*, 102 F.3d 267, 274 (7th Cir. 1996). If, as Ford contends, defendants transferred him to the Pontiac Correctional Center in retaliation for his filing grievances, then they have violated his constitutional rights. The court accordingly denies defendants Montgomery and Thomas's motion to dismiss as to this claim.

### E. Inadequate Investigation

Ford claims that defendant Stewart took pictures of him after the May 15 assault, wrote an incident report, and was present when Montgomery and Thomas threatened to transfer him. It is difficult to determine what kind of claim Ford is making against Stewart, and even a *pro se* litigant needs to set forth allegations concerning all material elements necessary for recovery under the relevant legal theory. *Chowla*, 743 F. Supp. at 1285. It appears the Stewart is an internal affairs investigator. Although he was present when Montgomery and Thomas threatened to transfer Ford, it does not appear that he had any authority to order any such transfer. Ford may be claiming that Stewart performed an inadequate investigation. However, an allegation of inadequate investigation

15

does not state a violation of a plaintiff's civil rights. *See Hanrahan v. Lane,* 747 F.2d 1137, 1142 (7th Cir. 1984); *McDonald v. State of Illinois,* 557 F.2d 596 (7th Cir.), *cert. denied,* 434 U.S. 966 (1977). The court grants defendants' motion to dismiss in regard to claims against defendant Stewart and dismisses him from this action.

## F. Official Capacity Liability

Ford states that he is suing each defendant in his or her official capacity for injunctive and declaratory relief and in their individual capacity for monetary damages.

An official-capacity suit is effectively an action against the entity of which the defendant officer is the agent and is treated as a suit against that entity. Because damage claims against a state are barred by the Eleventh Amendment, state officials may not be sued for damages in federal court in their official capacity. *Scott v. O'Grady,* 975 F.2d 366, 369 (7th Cir. 1992), *cert. denied,* 508 U.S. 942 (1993). Further, neither state agencies nor state officials acting in their official capacities are "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989).

However, the Eleventh Amendment shields officials only from damages, not from injunctive relief. *Alston v. DeBruyn,* 13 F.3d 1036, 1038 n.1 (7th Cir. 1994). So, the question becomes, what kind, if any, injunctive relief could Ford obtain and against which defendants in order for him to maintain his action against defendants in their official capacity? Ford cannot obtain injunctive relief against any of the defendants in regard to his claims of excessive force and delay in medical treatment because his transfer rendered his requests for injunctive relief moot. *See Fuller v. Dillon,* 236 F.3d 876, 883 (7th Cir. 2001); *see also Lyons v. City of Los Angeles,* 461 U.S. 95, 102 (1983) ("[p]ast

exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects").

If Ford is able to demonstrate at a later time that his transfer to Pontiac Correctional Center was in retaliation for his filing grievances, then he conceivably could be given injunctive relief in the form of a transfer back to Stateville Correctional Center, where he claims the conditions are better. The court cannot ascertain from the pleadings before it whether Warden James H. Page and Assistant Warden Montgomery are the proper parties to whom such an injunction should be issued, but they appear to be the defendants to have the most wherewithal to accomplish a transfer back to Stateville, if, as noted earlier, Ford can prove that his transfer was motivated by retaliatory animus. The court accordingly will not dismiss the official capacity claim against Warden Page and Assistant Warden Montgomery at this time. Because it is obvious that no other defendant can render injunctive relief, all claims against them in their official capacity are dismissed.

### G. Individual Capacity

Individuals cannot be held liable in a Section 1983 action unless they caused or participated in the alleged constitutional deprivation. *Vance v. Washington*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230 (1997); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995); *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986) (*citing Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)). Supervisors and others in authority also cannot be held liable for any alleged wrongdoing on the part of subordinates pursuant to the doctrine of *respondeat superior* because that doctrine does not apply to § 1983 actions. *See Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992); *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

It is clear from the complaint that defendants Voights, Jackson, Spencer, Hollingsworth, Selmon, and Autman, allegedly caused or participated in the alleged use of excessive force or delay in medical treatment or both. However, none of these defendants appear to be involved in the allegedly retaliatory transfer. It is clear that defendants Montgomery and Thomas allegedly caused or participated in the alleged retaliatory transfer but were not involved in either the use of excessive force or delay in medical treatment or both.

The court has not been able to find any personal involvement on the part of Warden Page as to these alleged constitutional violations. As noted above, he cannot be held liable on the basis of *respondeat superior*. All claims against Warden Page in his individual capacity are accordingly dismissed.

## IV. Conclusion

For the foregoing reasons, the court grants in part and denies in part defendants' motion to dismiss. The court grants the motion to dismiss as to defendants' claim that Ford failed to exhaust his administrative remedies as to Counts 7 and 8. The court denies the motion as to defendants' claim that Ford failed to exhaust his administrative remedies as to the use of excessive force, delay in medical treatment, and retaliatory transfer. The court grants defendants' motion to dismiss as to Ford's claims about his conditions of confinement because he failed to show a physical injury. The court denies defendants' motion to dismiss as to their claims that Ford failed to state constitutional violations in regard to the use of excessive force, delay in medical care, and retaliatory transfer. The court grants defendants' motion to dismiss as to any claim regarding an inadequate investigation.

Because Ford has failed to state a claim against them, defendants Adams and Stewart are dismissed from this action. The official capacity claim against defendants Page and Montgomery as

to the retaliatory transfer remains. Claims against the remaining defendants in their official capacity are dismissed. Individual capacity claims as to use of excessive force and delay in medical treatment remain against defendants Voights, Jackson, Spencer, Hollingsworth, Selmon, and Autman. Individual capacity claims as to the retaliatory transfer remain against defendants Montgomery and Thomas. Individual capacity claims against Page are dismissed.

Defendants are given 20 days to answer or otherwise plead to the complaint. An order of default is entered against defendant McBride for failure to answer or otherwise plead to the complaint. Ford is given 30 days to show good cause why defendant King was not served within 120 days of the filing of this complaint on October 2, 2000. If Ford does not show good cause or otherwise respond within 30 days, defendant King will be dismissed from this action.

IT IS SO ORDERED.

HARRY D. LEINENWEBER, Judge
United States District Court

DATED: April 27, 2001