Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | HARRY D. LEINENWEBER | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 4592 | DATE | December 13, 2002 |
| CASE TITLE | Ford v. Page | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The court grants defendants' motion for summary judgment [64] and denies plaintiff's motion for summary judgment [67]. The Clerk is directed to enter judgment in favor of defendants James Page, Jesse Montgomery, John Thomas, Leonta Jackson, Daniel Voights, and against plaintiff Bobby Ford pursuant to Fed. R. Civ. P. 56. The claims against defendants Anthony Selmon, Vincent Hollingsworth, Raphael Spencer, Bukari Autman, Marcus McBryde, and C/O King are dismissed without prejudice for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a). Defendants' motion to supplement motion for summary judgment [65] is granted. Plaintiff's motion to compel defendants to provide production of documents and answers [62] is denied. Plaintiff's request for a ruling [79] is denied as moot.

(11) ■ [For further detail see attached Memorandum Opinion and Order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 13 2002 date docketed | 80 |
| | Notified counsel by telephone. | | | |
| X | Docketing to mail notices. | | docketing deputy initials | |
| X | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | | | |
| CLH | courtroom deputy's initials | 02 DEC 13 PM 3:09 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED DEC 1 3 2002
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

BOBBY FORD, )
)
    Plaintiff, )
)
v. ) CASE NO. 00 C 4592
)
WARDEN JAMES H. PAGE, ASST. WARDEN ) JUDGE LEINENWEBER
MONTGOMERY, SUPT. JOHN THOMAS, )
INVESTIGATOR STEWART, LT. McBRIDE, )
GEORGIA SCHONAUER/GRIEVANCE OFFICER, )
COUNSELOR D. LUCE, A. JOHNSON, C/O KING, )
M. THOMPSON, LT. JACKSON, LEORA HARRY, )
C/O SELMON, JIM SIMMONS, SGT. )
HOLLINGSWORTH, DIRECTOR SNYDER, )
C/O D. VOIGHTS, MED-TECH ADAMS, )
C/O SPENCER, C/O AUTUMN, C/O's UNKNOWN )
and ALL OTHER KNOWN AND UNKNOWN )
OFFICIALS, )
)
    Defendants. )

DOCKETED DEC 1 3 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff Bobby Ford, currently an inmate at the Pontiac Correctional Center, brings this *pro se* complaint pursuant to 42 U.S.C. § 1983. On April 27, 2001, the court granted in part and denied in part defendants' motion to dismiss. Seven claims remain in this action: three allegations of use of excessive force on December 3, 1999, and May 1 and 15, 2000; three allegations of delay of medical care on these dates; and an allegation of a retaliatory transfer as a result of filing grievances. The remaining defendants, James Page, Jesse Montgomery, John Thomas, Leonta Jackson, Anthony Selmon, Vincent Hollingsworth, Daniel Voights, Raphael Spencer, Bukari Autman, and Marcus

1

McBryde,[1] have filed a motion for summary judgment. Ford has responded and filed a cross-motion for summary judgment. For the following reasons, the court will grant summary judgment in favor of defendants, and will deny Ford's cross-motion for summary judgment.

## I. Standard of Review

*Borcky v. Maytag Corporation*, 248 F.3d 691, 695 (7th Cir. 2001), details the criteria a district court must follow in ruling on a motion for summary judgment:

> [A district court] "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000). Summary judgment is proper if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
>
> However, "[t]he mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment," *Liu v. T & H Mach., Inc.*, 191 F.3d 790, 796 (7th Cir. 1999); only a "genuine" issue of "material" fact precludes summary judgment, Fed. R. Civ. P. 56(c). "Factual disputes are 'material' only when they 'might affect the outcome of the suit under the governing law.'" *Oest v. Illinois Dep't of Corrections*, 240 F.3d 605, 610 (7th Cir. 2001) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Furthermore, "[f]actual disputes are 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the [nonmovant].'" *Id.* (*quoting Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505). Speculation will not suffice. *See Liu*, 191 F.3d at 796 ("A party must present more than mere speculation or conjecture to defeat a summary judgment motion."); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001); *Gorbitz v. Corvilla, Inc.*, 196 F.3d 879, 882 (7th Cir. 1999) (stating that a plaintiff's speculation is "not a sufficient defense to a summary judgment motion").

The party moving for summary judgment has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. Once the moving party has sustained the initial burden, the opposing party may not rest upon

---

[1] The court will use the correct spelling of defendants' names.

2

the mere allegations or denials of the pleadings, but instead must come forward with specific evidence, by affidavits or as otherwise provided in Rule 56, showing that there is a genuine issue for trial. *Id.* at 324.

Moreover, a party may not attempt to survive a motion for summary judgment through the submission of an affidavit that contradicts testimony in his deposition. *Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir. 2001).

## II. Analysis

As an initial matter, the court notes that defendants have moved to strike Ford's Statement of Uncontested Facts because it does not comply with Local Rule 56.1(b)(3)(A) and (B).[2] Defendants properly appraised Ford of the requirements of a proper response to a motion for summary judgment in their "Notice to Pro Se Litigant Opposing Motion for Summary Judgment." However, Ford failed to include references to the affidavits, parts of the record, and other materials relied upon. Ford was instructed repeatedly about complying with the local rules in a previous action before this court, *Ford v. Page*, No. 99 C 8464 (N.D. Ill.). Although Ford failed to meet the standards set forth in Local Rule 56.1(b)(3)(A) and (B), the court will consider Ford's response in

---

[2]Local Rule 56.1(b)(3)(A) and (B) provides:

(3) a concise response to the movant's statement that shall contain:

(A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and

(B) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

the evaluation of this motion. However, Ford is on notice that in any future litigation that may entail a motion for summary judgment, he must comply with the Local Rules and not expect either the court or the defendants to search through the record for support of his statements. Future failure to comply with the Local Rules may result in Ford's response being stricken and defendants' statement of material facts being deemed admitted.

## A. Exhaustion of Administrative Remedies

In its Memorandum Opinion and Order of April 27, 2001, *Ford v. Page*, 169 F.Supp. 2d 831 (N.D. Ill. 2001), the court analyzed defendants' claim that Ford had not exhausted his administrative remedies in regard to the alleged incidents of excessive force and delayed medical attention on May 1 and 15, 2000, in light of the case law at that time. The court determined that these alleged assaults and delays in medical care fit squarely within what was then known as the "*Perez* exception," that is, the harm had been completed and no further administrative action could supply any remedy. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 538 (7th Cir. 1999).

The recent decision of *Porter v. Nussle*, 534 U.S. 516 (2002), lays to rest the *Perez* exception. In *Porter*, the United States Supreme Court held that exhaustion of administrative remedies, pursuant to the Prison Litigation Reform Act, is required for all prisoner suits seeking redress for prison circumstances or occurrences. Exhaustion is required whether the complaint involves general circumstances of incarceration or particular episodes, and whether it alleges Eighth Amendment violations based on use of excessive force or some other wrong. The Supreme Court could not be clearer–prisoners must exhaust available administrative remedies before bringing a suit to federal court.

Defendants state that a thorough search of the records maintained by the Office of Inmate Issues of the Administrative Review Board (ARB) has located no grievances from Ford in regard to the alleged uses of excessive force and delayed medical care on May 1 and 15, 2000. Defendants have proffered the affidavit of Sandra Kibby-Brown, the Coordinator of Inmate Issues for the Illinois Department of Corrections. She states that after making a thorough search of the ARB's records maintained by her office, no grievances from Ford were found as to the May 1 and 15, 2000, incidents. (Defendants' Exhibit 1, ¶ 7.)

In response, Ford states that, on June 5, 2000, he forwarded a seven-page grievance directly to the ARB in regard to these issues. (Plaintiff's Statement of Uncontested Facts, ¶ T.) However, the grievance was returned to Ford, with a notation that he should "[g]rieve one issue at a time to allow for appropriate review." (Plaintiff's Affidavit, Exhibit 1, and June 9, 2000, memorandum from the Administrative Review Board, attached to plaintiff's response.) Ford interpreted this as a refusal on the part of the ARB to process the grievance. He argues that it is not his fault if the ARB refused to process his grievance.

The ARB clearly refused to process Ford's June 5, 2000, grievance in the form in which Ford had submitted it. However, the ARB gave Ford directions for submitting his grievances properly, that is, to grieve one issue at a time. According to the procedures in effect at the time of these incidents,[3] Ford had six months from the time of the incidents to file grievances, using proper

---

[3] IDOC's administrative grievance system is set out in the Illinois Administrative Code. Inmates must follow these procedures: (1) The inmate must first attempt to resolve the situation through his counselor; (2) If the situation remains unresolved, he may file a written grievance within six months of the incident or six months after the receipt of a decision concerning an informal resolution with the facility's grievance officer. Upon completion of an investigation by the grievance officer, the conclusions, and, if necessary, recommendations, are forwarded to the Chief Administrative Officer; (3) If the inmate does not believe the situation is resolved, he may appeal to the Director of the IDOC. The Administrative Review Board as the Director's designee reviews the appeal of the grievance and

5

procedures, that is, grieving one issue at a time and filing separate grievances for separate issues. Ford was instructed to grieve one issue at a time, and he still had about five months to do so. In *Pozo v. McCaughtry*, 286 F.3d 1022 (7th Cir. 2002), the Court of Appeals held that prisoners are required to exhaust internal remedies established by the institution, following the institution's procedures, before filing suit. Ford was given explicit instructions as to filing his grievances. He did not follow these instructions.

The court accordingly finds that Ford did not exhaust his administrative remedies in regard to the alleged uses of excessive force and alleged delays in medical treatment on May 1 and 15, 2000. Defendants Anthony Selmon, Vincent Hollingsworth, Raphael Spencer, Bukari Autman, and Marcus McBryde's motion for summary judgment is granted and Ford's motion for summary judgment is denied as to Ford's failure to exhaust his administrative remedies on these dates.[4]

---

determines whether a hearing is necessary; (4) The Administrative Review Board forwards its decision and any recommendations to the Director or other designee, who makes a final determination. 20 Ill. Admin. Code § 504.810-850.

[4] Defendants Anthony Selmon, Vincent Hollingsworth, Raphael Spencer, Bukari Autman, Marcus McBryde, and C/O King are the defendants allegedly involved in these incidents. However, defendant King has never been served. A judge may grant summary judgment in favor of all defendants even if only some defendants have moved for summary judgment. *Hunger v. Leininger*, 15 F.3d 664, 669 (7th Cir.) (citations omitted), *cert. denied*, 513 U.S. 839 (1994). A court may take this *sua sponte* action "where nonmoving defendants are in a position similar to that of moving defendants or where the claims against all the defendants are integrally related," See *Bonny v. The Society of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993), *Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1304 (7th Cir. 1988). It is reasonable to extend the practice of dismissing defendants who have not joined in a motion when they are similarly situated to the moving defendants or where the claims against all the defendants are integrally related to unserved defendants, as it would serve no purpose for a plaintiff to go through the motions of completing service in order to transform a dismissal without prejudice for failure to serve into a dismissal with prejudice for failure to state a claim. See *Mitchell v. Fairman*, No. 95 C 3648, 1996 WL 420294, *6 (N.D. Ill. Jul. 24, 1996) (Gettleman J.) Defendant King allegedly was involved in the May 15, 2000, use of excessive force. The claims against King are therefore integrally related to the claims against the moving defendants. The court accordingly enters summary judgment in favor of C/O King. Because the court is granting summary judgment on the basis that Ford did not exhaust his administrative remedies in regard to the May 15, 2000, use of excessive force, the claim against C/O King is dismissed without prejudice pursuant to 42 U.S.C. § 1997e(a).

These claims are dismissed without prejudice for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a).

**B. The Exhausted Claims**

Defendants James Page, Jesse Montgomery, John Thomas, Daniel Voights, and Leonta Jackson concede that Ford exhausted his claims as to the use of excessive force and delay of medical care on December 3, 1999, as well as his allegation of a retaliatory transfer as a result of filing grievances.

**1. Delay in Medical Attention**

The Eighth Amendment protects inmates from deliberate indifference to a serious injury or medical need. *See Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *Zentmeyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The Supreme Court refined the *Estelle* definition of "deliberate indifference" in *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), holding that a prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety;" and is both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and draws the inference. Neither negligence nor even gross negligence is a sufficient basis for liability; rather, liability attaches only if the conduct is intentional or criminally reckless. *See Salazar v. City of Chicago*, 940 F.2d 233, 238-39 (7th Cir. 1991). Allegations of negligence or medical malpractice do not state an Eighth Amendment claim. *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997). However, deliberate indifference can arise by a failure to provide prompt treatment for serious medical needs or by an intentional interference with treatment once prescribed. *See Estelle*, 429 U.S. at 104-05.

In the instant case, Ford claims that defendants Voights and Jackson intentionally delayed obtaining medical care for him on December 3, 1999. Defendants have submitted both Ford's deposition and an inmate injury report. In his deposition, Ford admits that he was seen by a med tech about 40 minutes after the alleged incident. (Plaintiff's Dep. at 33.) In addition, the inmate injury report indicates that the incident occurred at approximately 9:50 p.m. and that Med Tech Adams evaluated Ford at about 10:05 p.m. (Defendant's Exhibit 2.) According to the injury report, Ford's only injury was an abrasion to the left arm proximal to the elbow. *Id.* The objective findings of the med tech were no active bleeding, no swelling, no echymosis, a small scrape on the left arm proximal to the elbow, and no other complaints. *Id.* The abrasion was cleansed, an antibacterial ointment and band aid were applied, and Ford was given reassurance and told to rest and see health care if symptoms worsened. *Id.* Ford never went to health care to receive any type of treatment for an injury to his finger and he never notified the medical unit that he needed treatment for an injury to his finger. (Plaintiff's Dep. at 30 and Exhibit 3, medical progress notes.)

In response, Ford argues that defendants Voights and Jackson intentionally delayed seeking medical care for his injuries and did not give him access to treatment until other inmates had banged on the steel doors for 20 minutes. He contends that the med tech did not document his injured finger and that both his arm and finger swelled later on. He claims he suffered nerve damage and was in pain for months afterwards.

As noted earlier, once the party moving for summary judgment has submitted affidavits and other evidentiary material showing the absence of a genuine issue of material fact, the opposing party may not rest upon the mere allegations or denials of the pleadings, but instead must come forward

with specific evidence, by affidavits or as otherwise provided in Rule 56, showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Ford has relied on his own allegations to support his claim of a delay in medical care. The exhibits that defendants have proffered belie this contention. Defendants' exhibits demonstrate that there was a 15-minute gap between the injury to Ford and being seen by the med tech. Even if the delay was as long as 40 minutes, as Ford claims in his deposition, it does not rise to the level of a constitutional violation. Ford's injuries were not sufficiently serious to implicate the Eighth Amendment.

Although Ford claims he suffered nerve damage and pain for several months after the injury, he appears not to have reported it at the time and his medical records demonstrate that he never complained to any medical personnel later on about the injury. Ford claims that the defendants never gave him copies of his medical records in response to his discovery requests. However, Ford could have obtained his medical records at his own request; he did not need to obtain them through discovery. *See* 20 IL ADC 107.310(b) ("Medical records shall be disclosed to a committed person or to his or her authorized attorney upon receipt of a written request for the information and a release signed by the committed person"). If the medical records had supported Ford's claim, it would have behooved him to obtain them through the proper channel. The medical progress notes and inmate injury report in the record demonstrate that Ford's injuries were not a serious medical need, that is, one that "may be life threatening or pose a risk of needless pain or lingering disability if not treated at once," *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991), and that he never complained of nerve damage and pain later on. No competent evidence in the record supports Ford's assertion that his injuries approached the gravity contemplated by *Estelle* and its progeny.

Defendants' motion for summary judgment is accordingly granted and Ford's motion for summary judgment is denied as to Ford's claim of delay in receiving medical treatment on December 3, 1999. Defendants Voights and Jackson are entitled to judgment as a matter of law on this claim.

**2. Use of Excessive Force**

The core judicial inquiry in determining whether an official used excessive force in violation of the Eighth Amendment is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6, 9 (1992). The infliction of pain in the course of a prison security measure does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable and hence unnecessary in the strict sense. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

In *Outlaw v. Newkirk*, 259 F.3d 833 (7th Cir. 2001), an inmate brought an action claiming that a guard intentionally slammed his hand in the cuffport hatch causing severe pain, swelling, and bruising. In analyzing cases alleging excessive force, the Seventh Circuit pointed out that a "court must examine a variety of factors, including 'the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner." *Id.* at 837, *quoting DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000) *citing Hudson*, 503 U.S. at 7. The Court of Appeals emphasized that, although an inmate does not need to demonstrate a significant injury to state a claim for excessive force, "'the degree of injury is relevant to determining whether the use of force could plausibly have been thought necessary in a particular situation.'" *Id.* at 840, *quoting Lunsford v. Bennett*, 17 F.3d 1574, 1582 (7th Cir. 1994).

10

In the instant case, Ford claims that defendant Voights used excessive force when he closed the chuckhole on Ford's arm. According to defendants' statement of facts and exhibits, on December 3, 1999, Voights was collecting trash from cell 3 D 09, where Ford was housed. (See Incident Report, Exhibit 6.) Ford put his arm all the way out of the chuckhole and refused direct orders to remove it. (*Id.*) Voights did not use force during the December 3, 1999, incident. (*Id.*)

Ford has attached the affidavit of inmate Robert J. Castleman, N–30427, to his motion for summary judgment. In it, he states that he "heard Bobby Ford, prison number N-20126 scream in anguish/pain when correctional officer D. Boights [sic] slammed Bobby Fords [sic] hand in the chuck hole." He continues that "the medical technician failed to treat the injuries caused by C/O Boights [sic] to inmate Bobby Ford's hand."

On its face, there is an issue of fact here. Voights states that he did not use force. Ford not only states that Voights used excessive force, he has also provided an affidavit from another inmate claiming he heard Ford scream in anguish.[5] However, a factual dispute is material only when it affects the outcome of the suit. *Oest*, 240 F.3d at 610.

Even assuming that everything Castleman swears is true and that Voights indeed forced Ford's arm inside before closing the chuckhole, it does not overcome defendants' exhibits that demonstrate that Ford suffered a "de minimis" injury from this shoving match. As Judge McDade of the Central District of Illinois found in *Walker v. Ahitow*, No. 90-1322, 1992 U.S. Dist Lexis 21831, *aff'd* 9 F.3d 1549 (7th Cir. 1993), the management of large numbers of prisoners by a few guards may require and justify the occasional use of a degree of intentional force. Not every push

---

[5]The court notes that Castleman does not state that he actually saw Voights slam the chuckhole door but rather that he heard Ford scream.

11

or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. The *Walker* court held that even though the guard may have been unnecessarily rough when he forced the inmate's arm back through the slot, the matter did not amount to a constitutional violation. *Id.* As in *Walker*, Ford admitted that he refused a direct order. Furthermore, the medical records show that Ford suffered only a scrape on the arm. At most, this incident is nothing more than a shoving match between an inmate who refused to obey an order and an officer attempting to comply with institutional policies by closing the chuckhole door. At worst, Voights shut the chuckhole door on the arm of the recalcitrant Ford until he moved it inside, thereby causing a scrape.

Under the circumstances of this case, the court therefore finds as a matter of law that the matter does not rise to the level of an Eighth Amendment violation. The court accordingly grants defendants' motion for summary judgment and denies Ford's motion for summary judgment in regard to the alleged use of excessive force on December 3, 1999. Defendant Voights is entitled to judgment as a matter of law.

### 3. Retaliatory Transfer

Ford contends that defendants transferred him to the Pontiac Correctional Center in retaliation for filing grievances and for complaining about and reporting staff conduct. Prisoners do not have a constitutional right to remain in or be transferred to a correctional institution of their own choosing. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Prison officials have the discretion to transfer prisoners for any constitutionally permissible reason. *Shango v. Jurich*, 681 F.2d 1091, 1098 (7th Cir. 1982). Nevertheless, retaliation for the exercise of a constitutionally protected right is actionable under 42 U.S.C. § 1983, even if the acts, if taken for different reasons, would have been proper. *See*

*Matzker v. Herr*, 748 F.2d 1142, 1150 (7th Cir. 1984). It is well established that punishing inmates for filing grievances violates their constitutional rights. *See, e.g., Babcock v. White*, 102 F.3d 267, 274 (7th Cir. 1996).

To succeed on a § 1983 claim for retaliatory transfer, Ford must demonstrate that: (1) he engaged in constitutionally protected conduct; and (2) his conduct was a substantial or motivating factor behind the allegedly retaliatory acts. *Moore v. Sarrazin*, No. 95 C 5185, 1997 WL 610307 *4 (N.D. Ill. 1997) (*citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1976)). In addition, the transfer must be sufficiently punitive so that it constitutes a "penalty for participation in the protected conduct." *Buise v. Hudkins*, 584 F.2d 223, 229 n. 8 (7th Cir. 1978). Here, Ford's claim must fail because defendants have shown that Ford would have been transferred even if he had never engaged in constitutionally protected activity. *Babcock*, 102 F.3d at 275.

According to the IDOC transfer report, Ford was transferred because of a pending investigation for allegations of staff misconduct. (Defendants' Exhibit 5.) According to a memorandum from Warden Page, dated May 19, 2000, Ford had alleged that he was being roughed-up by staff between May 13 and May 15, 2000. (Defendants' Exhibit 4.) Ford was transferred from the segregation unit at Stateville to the segregation unit at Pontiac. (Defendants' Exhibit 5.) Defendants contend that Ford cannot argue that the transfer was in retaliation for exercising his constitutional rights when he was transferred from one maximum security segregation unit to another.

Ford claims that he was transferred because he filed grievances about staff misconduct, in particular, the alleged use of excessive force and delay in medical treatment on May 1 and 15, 2000. Ford filed grievances about these incidents, although, as discussed above, he did not exhaust his administrative remedies in regard to these particular incidents. He also filed grievances in regard to

13

the December 3, 1999, alleged use of excessive force and delay in medical treatment. By filing grievances, Ford was undoubtedly engaged in protected constitutional activity and satisfies the first prong of the question.

However, Ford falters in demonstrating that "but for the retaliatory motive the complained of incident ... would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Ford simply asserts that his filing grievances was the primary reason for his transfer. Other than his own statements, he has offered no evidence that this was the primary reason for the transfer. Even assuming Ford's filing of grievances was part of the motivation for transferring him, defendants have offered ample evidence demonstrating that the reason for Ford's transfer was for his own safety. The incident report of May 19, 2000, clearly states that "Ford alleged that he was roughed-up by staff between May 13, 2000 and May 15, 2000." (Defendants' Exhibit 4.) In addition, the transfer report states that Ford was being transferred "pending invest. for allegations of staff misconduct." (Defendants' Exhibit 5.)

Ford argues that if defendants' concern was his safety, then they could have transferred him to another unit at Stateville where Lt. McBryde was not assigned. He adds that after McBryde left employment with IDOC, they could have transferred him back to Stateville. All that is possibly true, but completely immaterial to the issue at hand. Once officials determined that Ford needed to be transferred away from the correctional officer who allegedly assaulted him, how and to where he was transferred was a decision left to the sound discretion of prison officials.

Moreover, it appears that Ford was in the segregation unit at Stateville and was then transferred to the segregation unit at Pontiac. Although Ford claims that conditions are much worse at Pontiac, the Seventh Circuit has held that disciplinary segregation in Illinois is not an atypical,

14

significant deprivation. *Williams v. Ramos*, 71 F.3d 1246, 1249 (7th Cir. 1995). He accordingly cannot claim that his transfer from one maximum security segregation unit to another was punitive. *Buise*, 584 F.2d at 229 n. 8.

The court accordingly grants defendants' motion for summary judgment and denies Ford's motion for summary judgment in regard to the retaliation claim. Defendants James Page, Jesse Montgomery, and John Thomas are entitled to judgment as a matter of law on Ford's retaliation claim.

## III. Conclusion

For the foregoing reasons, the court grants defendants' motion for summary judgment and denies Ford's motion for summary judgment. The Clerk is directed to enter judgment in favor of defendants James Page, Jesse Montgomery, John Thomas, Leonta Jackson, Daniel Voights, and against plaintiff Bobby Ford pursuant to Fed. R. Civ. P. 56. The claims against defendants Anthony Selmon, Vincent Hollingsworth, Raphael Spencer, Bukari Autman, Marcus McBryde, and C/O King are dismissed without prejudice for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a).

If Ford wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Rule 4(a)(4), Fed. R. App .P. If he does so, he will be liable for the $105 appellate filing fee. Unless he is granted leave to proceed *in forma pauperis*, he will have to pay the fee immediately. If he cannot do so, the appeal will be dismissed, but he will remain liable for the fee and it will be deducted from his inmate trust fund account in installments. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). If this court finds that appeal is not taken in good faith, and the Court of Appeals agrees, he will not be permitted to proceed *in forma pauperis*

and pay the fee in installments, but will have to pay the fee immediately or the appeal will be dismissed. 28 U.S.C. § 1915(a)(3). To avoid a finding that the appeal is not taken in good faith, a motion to proceed *in forma pauperis* on appeal should explain the grounds for the appeal. *See Hyche v. Christensen*, 170 F.3d 769, 771 (7th Cir. 1999); Fed. R. App. P. 24(a)(1)(C).

IT IS SO ORDERED.

HARRY D. LEINENWEBER, Judge
United States District Court

DATED: December 13, 2002